### LORENZO JOHNSON V. THE STATE.

*No. 718.    Decided March 20.*

1. **Theft of Cotton—Fraudulent Taking and Possession.**—Where a party was intrusted with several bales of cotton which were deposited by him with a warehouseman, and he subsequently procured from the latter receipts and samples of two of the bales, by means of which he sold the same, *Held*, that if it be conceded that he had parted with the possession in a manner as that he could not rightfully resume it, still, if the other elements of theft were present, there is no such taking in fact of possession of the two bales of cotton as to constitute theft, his actual posssssion being confined to the two samples alone.

2. **Same—Want of Consent—Proof of.**—On a trial for theft of two bales of cotton, where it appeared from the evidence that defendant claimed a right to the

same on account of work and labor done in making and gathering some fifty bales of cotton for his father, but it further appeared, that a third party held a mortgage from the father upon the entire crop, of which defendant was ignorant, *Held*, that to constitute theft from the father the prosecution should have shown beyond a reasonable doubt the want of consent of the father to the taking.

3. **Same—Indictment.**—An indictment for theft of cotton alleged ownership in one J.; that it was taken from the possession of one W., agent, etc., of the F. C. Company Wharf, who was holding it for J., and alleging want of consent of J. and W., the agent. *Held*, it is questionable if the indictment was sufficient without also negativing the want of consent of the said F. C. Company Wharf.

APPEAL from the District Court of Robertson. Tried below before Hon. W. G. TALIAFERRO.

This appeal is from a conviction for the theft of two bales of cotton, with punishment assessed at two years in the penitentiary.

The indictment contained two counts, alleging (1) possession in Jack Johnson, and that the taking was without his consent; (2) ownership in Jack Johnson; that the taking was from the possession of one E. G. Wilder, agent and employe of the Farmer Cotton Company Wharf, who was holding the same for Jack Johnson, without the consent of the said Jack Johnson and E. G. Wilder, or either of them, etc.

We take the following statement, which is substantially correct, from the brief of appellant on file in the case, viz:

"The evidence shows, that appellant is a minor, about 17 years old; that Jack Johnson is his father. That at the first of the year 1894 appellant was about to leave home and hire out; that his father induced him to remain at home and help him make and gather a crop, promising to give him three bales of cotton and 100 bushels of corn as compensation. Appellant accepted, and helped to make and gather the crop. Ninety-six acres of land were cultivated, and about fifty bales of cotton raised and gathered. Appellant hauled the cotton to the gin and to the market. He was to have three bales sometime during the fall out of this crop. About October, 1894, appellant called at the Farmer Cotton Company Wharf, in Calvert, and asked for a receipt and sample of one bale of cotton in his own name, and another receipt and sample in his father's name, and received said receipts and samples from E. G. Wilder, agent of said company wharf. Wilder asked him no questions, except where his father was. Later, appellant presented receipts and samples of two bales of cotton, one receipt in his own name and one in his father's name, to Schwartz, a cotton buyer, who gave appellant a check for about $44, in lieu or said receipts and samples. Appellant sent the returns of said cotton to his father. After the contract between appellant and his father was made, his father (Jack Johnson) mortgaged all his crop to Parish & Proctor, merchants, of Calvert, Texas. Appellant never knew of this. Jack Johnson says, that he never consented to appellant's taking and appropriating the cotton in controversy, because the mortgage of Parish & Proctor prevented him from giving consent; that it would have been

all right with him had it not been for the mortgage, and that appellant did not know of the mortgage; that appellant was entitled to three bales somewhere out of said cotton crop; that appellant had never yet received any other part of his compensation. The cotton was not moved from the cotton wharf by appellant or any one else, and was not present nor seen by Schwartz when he took the receipts and samples and gave appellant a check. There was no interruption of anybody's possession."

*J. D. Gann* and *Simmons & Crawford*, for appellant, filed an able brief and argument in the case.

*Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—The appellant in the above case was tried at the January Term of the District Court of Robertson County under an indictment charging him with theft of two bales of cotton, was found guilty by the jury, and his punishment assessed at two years in the penitentiary; and from the judgment and sentence of the lower court he prosecutes this appeal. The appellant, a boy about 17 years of age, carried four or five bales of cotton to the town of Calvert, and deposited same with the agent of the wharf company. Four bales of the cotton were deposited in the name of defendant's father, Jack Johnson, and one bale in his (defendant's) own name. Subsequently, on the same day, defendant went to Wilder, the agent of the wharf company, and procured receipts and samples of two of the bales, and with these he made sale of said two bales to one Schwartz, a cotton buyer, receiving therefor a check on a local bank for $42. If it be conceded that defendant had parted with the possession of the cotton in such a manner that he could not afterwards rightfully resume possession thereof, then we fail to see such a taking into possession in the case as would constitute the appellant guilty of theft if the other elements of the alleged crime were present. There is no evidence in the record that he ever afterwards came into actual possession of any of the cotton, except the two samples, and these were given him by Wilder; and the record fails to disclose that even Schwartz ever came into actual possession of the two bales of cotton. This method of dealing with cotton and selling same may be a usage of trade, and may constitute one a constructive possessor; but, in our opinion, the facts did not show that the appellant, in what he did, made such a taking of the cotton as is required before he can be prosecuted for theft of same.

The appellant in this case appears to have been convicted of theft of cotton from his father, Jack Johnson, and in such case the want of consent of the alleged owner, where it becomes a material question in the case, must be made to appear beyond any reasonable doubt. Yet the record fails to show in a satisfactory manner this want of consent. His father owed him three bales of cotton out of that crop for work

and labor performed in making and gathering it. While his father, Jack Johnson, says he had never told the appellant to take these two certain bales, yet he owed him, and defendant had a right to three bales somewhere out of the crop. Mr. Parish had a mortgage on his entire crop, but defendant knew nothing about it, and Parish had got all of the forty-seven bales he had made except the two; and as far as he was concerned, he was making no "kick" about the defendant's taking the cotton. The "kick" was coming from Parish. So, to our minds, if there had been such a trespass on the part of defendant as to constitute a taking, the evidence of such want of consent is very meager in the case, and in view of the weakness of this testimony, and that there was no concealment about the transaction, and that the defendant took the receipt and samples, and assumed to dispose of the cotton—under a claim of right to it—this phase of the case should have been given in charge to the jury.

There is another serious question in this case. The conviction appears to have been under the second count of the indictment. In this it is alleged, that the cotton was the property of Jack Johnson, and was taken from the possession of E. G. Wilder, the agent and employe of the Farmer Cotton Company Wharf, who was holding the same for the said Jack Johnson, without the consent of the said Jack Johnson and E. G. Wilder, or either of them, etc. The possession of E. G. Wilder seems to have been as the agent and employe of the Farmer Cotton Company Wharf, but whether the latter was a corporation or joint stock company or a copartnership, the indictment does not inform us. Yet said concern, whatever it was, was the real possessor of said two bales of cotton. The indictment in this respect is most peculiar, and we do not remember to have seen one just like it; but it is questionable if a prosecution could be maintained on this indictment, unless it was disclosed who or what said "Farmer Cotton Company Wharf" was, and have negatived its consent to the taking.

For the reasons pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

HURT, Presiding Judge, absent.